Dear Honorable Brian E. Frosh
You have asked for our interpretation of a provision of the Maryland Condominium Act that governs the conversion of rental housing to a condominium regime. Under the Act, the developer of the condominium must offer extended leases to current occupants who meet specified eligibility standards — referred to as "designated households" in the statute. That statute caps the developer's obligation to grant extended leases to 20% of the units within the condominium. You cite a situation in which some designated households rejected an offer of an extended lease. You ask whether a developer must offer the leases to other designated households until the 20% cap is reached or whether the developer satisfies its obligation under the statute by simply offering extended leases to 20% of the households.
In our opinion, a developer does not satisfy its obligations by offering extended leases to only 20% of the current tenants. The relevant statute requires the developer to notify all tenants of the impending conversion and of the right to extended leases for those tenants who qualify as "designated households." Any tenants who wish to obtain an extended lease are to return an executed lease form together with documentation that they qualify. Because the statute caps the developer's obligation to enter into extended leases at 20% of the total number of units, the developer may decline to accept some of the proffered leases only if the total number of designated households seeking extended leases exceeds the 20% cap. If the number of designated households seeking leases exceeds the cap, the statute provides an order of priority for the developer to follow in selecting those households — at least 20% of the total number of units — for whom the extended leases become effective.
 I Background
A condominium is a form of real property that combines individually owned units with commonly owned facilities and areas and that is governed by rules concerning the administration, maintenance, and use of the property. See 90 Opinions of the Attorney General 35 (2005). In Maryland, the creation of a condominium regime and the initial sale of condominium units are governed primarily by the Maryland Condominium Act. Annotated Code of Maryland, Real Property Article ("RP"), § 11-101et seq.
In the Act, the General Assembly has expressed an intent "to facilitate the orderly development of condominiums," but has also recognized that "the conversion of rental dwellings to condominiums can have an adverse impact on the availability of rental units, resulting in the displacement of tenants." RP § 11-140(a). Accordingly, if the owner of a residential property, such as an apartment building, decides to convert it to a condominium regime, the Act confers certain rights on the renters of that property and certain obligations on the developer. The General Assembly has also authorized local legislative bodies to make findings whether condominium conversions have created a local rental housing emergency and to take certain specified actions to alleviate such an emergency. RP § 11-140(b)-(c).
Pertinent to your question, under the Maryland Condominium Act, a developer who intends to convert a rental property with at least 10 units into a condominium must allow up to 20% of the tenants to remain as tenants under extended leases for up to three years, if those tenants meet certain criteria related to age, health, and income, and are in compliance with the terms of their current lease. In particular, a household that includes a senior citizen[1] or an individual with a disability[2] who has been a member of the household for at least 12 months, that has an annual income below a specified amount,[3] and that is current in its rent payments and has not violated any other material term of the lease is eligible to apply for an extended lease. RP § 11-137(b)(1)-(2).
A developer must send a notice to all tenants informing them of the prospective conversion and of the rights they have under the Act, including the right to purchase the unit in which the tenant resides[4] and the right of eligible tenants to enter into an extended lease. See RP §§ 11-102.1, 11-136; see also 91 Opinions of the AttorneyGeneral 43 (2006). Included in that notice must be an explanation in the form set out by the statute of the conditions under which a tenant may qualify for an extended lease. RP § 11-102.1(f). Together with the notice, the developer is to deliver an application for an extended lease, an extended lease form for execution by the tenant, and a copy of the public offering statement for the condominium conversion. RP § 11-137(c). The lease form provided to the tenant is to indicate that:
The lease will be effective only if:
 (i) The tenant executes and returns the lease not later than 60 days after the giving of the notice required by [RP] § 11-102.1 . . .; and
 (ii) The household is allocated 1 of the units required to be made available to qualified households based on its ranking under [RP § 11-137(k)] and the number of tenants executing and returning leases;. . . .
RP § 11-137(c)(2).
A tenant who wishes to enter into an extended lease must respond to the notice within 60 days. The tenant must submit an executed copy of the extended lease to the developer and also provide information by affidavit demonstrating the tenant's eligibility for the extended lease. RP § 11-137(b)(3). The affidavit must affirm that the tenant is seeking an extended lease, set forth the household's annual income with "reasonable supporting documentation", and provide facts demonstrating that a member of the household is a senior citizen or has a disability and has been a member of the household for at least 12 months.Id.
Within 75 days after giving the notice to the tenants, the developer is to notify each household that has applied for an extended lease whether it meets the criteria for an extended lease and, if not, why not. RP § 11-137(d)(1). The developer is also to advise the tenant whether the lease has become effective. RP § 11137(d)(2).
Even if a tenant qualifies for an extended lease and submits the required information, the lease may not become effective if more than 20% of the tenants qualify for extended leases. A developer is not obligated to set aside more than 20% of the units for extended leases. RP § 11-137(k)(1). If more than 20% of the current tenants are eligible for extended leases, the statute provides rules for allocation of extended leases. RP § 11-137(k)(2). The statute first allows for allocation by the local governing body. RP § 11137(k)(2)(i). If the local governing body does not provide for an allocation, the extended leases are to be allocated by the developer based on the tenant's seniority in residence with priority also to be given to tenants who require wheelchair accessible housing. RP § 11-137(k)(ii)-(iii). A designated household that does not obtain an extended lease is entitled to the payment of moving expenses and three months rent. RP § 11-137(m).
An extended lease is to run for at least three years from the date of the statutory notice. RP § 11-137(f)(1). The rent may be increased each year, but the increase is capped by a measure of inflation. RP § 11-137(f)(2). The statute also sets out circumstances under which the extended lease may be terminated by the tenant or otherwise. RP § 11-137(h), (j).[5] The developer may sell the unit to a purchaser subject to the extended lease. RP § 11-137(i).
 II Analysis
Your inquiry concerns the allocation of extended leases under RP § 11-137(k) when the number of designated households exceeds 20% of the total number of tenants. You state:
 The meaning of this provision came into question during conversion of a Montgomery County apartment building in which a number of households eligible for extended leases exceeded 20% of the total number of units. Some of the qualifying households rejected the offer of an extended lease. The developer took the position that it was not required to offer leases to other qualifying households after an offer of a lease was rejected. Is the developer free to convert and sell the units whose renters have rejected extended leases, or must it offer the leases to other qualifying households until the 20% level has been reached or all qualifying households have been offered a lease?
You posit a situation in which more than 20% of the households in a rental property qualify as "designated households" under the Maryland Condominium Act due to the presence of senior citizens or individuals with disabilities. A developer plans to convert the property into a condominium and apparently intends to offer extended leases to some pre-identified set of households constituting 20% of the total number of units. Some of these tenants decline the offer of an extended lease. The developer does not make any other offers of extended leases, contending that the offers to 20% of the households satisfies its obligation.
The process that you describe does not comply with the Maryland Condominium Act. The statute makes clear that the developer must send the notice and lease form to all tenants, which necessarily includes all designated households. Thus, under the factual situation you have suggested, the developer should offer extended leases to all of the designated households at the outset of the process. Assuming that some, but not all, of those households were to return executed leases, whether the extended lease goes into effect for a particular household depends on three things: (1) the household must demonstrate by affidavit that it meets the statutory definition of a designated household; (2) the household must return an executed extended lease form to the developer; and (3) of the designated households seeking extended leases, it must be among the first 20% of the total households under the statutory allocation scheme.
In sum, even if a designated household that has a high priority under the statutory allocation scheme declines to execute an extended lease form, the developer is not relieved of its statutory obligation to offer extended leases to other designated households. The developer must still enter into extended leases with designated households according to seniority in the building or the priority set by local governing body until 20% of the units are covered by extended leases or all designated households have entered into such a lease, whichever happens first.[6]
 III Conclusion
In our opinion, a developer does not satisfy its obligations under RP § 11-137 by offering extended leases to only 20% of the current tenants. The statute requires the developer to notify all tenants of the impending conversion and of the right to extended leases for those tenants who qualify as designated households. Any tenants who wish to obtain an extended lease are to return an executed lease form together with documentation that they qualify. Because the statute caps the developer's obligation to enter into extended leases at 20% of the total number of units, the developer may decline to accept some of the proffered leases only if the total number of designated households seeking extended leases exceeds the 20% cap. If the number of designated households seeking leases exceeds the cap, the statute provides an order of priority for the developer to follow in selecting those households — at least 20% of the total number of units — for whom the extended leases become effective.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] "Senior citizen" is defined as an individual who is at least 62 years old on the date that notice of the conversion is given. RP § 11137(a)(7).
[2] For purposes of this statute,
 (i) "Disability" means:
 1 A physical or mental impairment that substantially limits one or more of an individual's major life activities; or
 2 A record of having a physical or mental impairment that substantially limits one or more of an individual's major life activities.
 (ii) "Disability" does not include the current illegal use of or addiction to:
 1 A controlled dangerous substance as defined in § 5-101 of the Criminal Law Article; or
 2 A controlled substance as defined in 21 U.S.C. § 802.
RP § 11-137(a)(4).
[3] See RP §§ 11-137(b)(1), (n).
[4] County or municipal law may also provide that the local government has a right, subordinate to that of the current tenants, to purchase up to 20% or the units of the condominium. RP § 11-139; see also RP § 11-137(e) (notice by developer to county or municipality eligible to purchase units). County or municipal law may also provide the local government with essentially a right of first refusal to purchase a rental facility slated for conversion to a condominium regime. RP § 11-138.
[5] The statute also provides for the temporary relocation of a designated household with an extended lease if the condominium conversion involves substantial reconstruction of the unit. RP § 11-137(l).
[6] The legislative history of the Maryland Condominium Act confirms this interpretation. The condominium conversion provisions were added to the Act in 1981. Chapter 246, Laws of Maryland 1981. A fact sheet describing the bill in the legislative file refers to the requirement that a developer offer extended leases to designated households as a "set aside program" under which "20% of the units in a converting building must be set aside for elderly and handicapped tenants for 3 years." SB 1028 (Condo Bill) Fact Sheet (1981). There is no indication anywhere in the legislative file that a particular tenant's decision not to pursue an extended lease necessarily reduces the 20% "set aside program" for elderly and disabled tenants. *Page 239